Our next case for argument is 24-1273, Group One v. GTE. Before we start, I should have done this at the outset, we're grateful to have a District Court Judge sitting with our court today, Judge Wang, coming from Colorado here to join us. We very much appreciate her. Thank you. Okay. Mr. Davis, please proceed. Good morning, Your Honors. May it please the Court, I'm Joshua Davis on behalf of Plaintiff and Appellant Group One. We're here on appeal of the denial of contempt sanctions against a non-party, United States Tennis Association, in a case that involved a patent asserted against a German manufacturer that supplied the USTA with lead detection equipment for multiple US Open tennis tournaments. The District Court erred in a couple of respects. First, by misinterpreting its own TRO as to require the non-party to commit direct infringement, I'm sorry, to require direct infringement be committed by the German manufacturer. And second, by reversing its initial factual finding that those two parties were acting in concert with one another. I'll start with that prong. I would assert that a litigant that's been found to be a contributory infringer should ought to be considered as a presumption, almost, acting in concert with its customer. There was an issue that arose during the hearing where, as the parties had been arguing over whether this was merely a customer, a purchaser-seller relationship, or whether there was an ongoing relationship between the German manufacturer and the USTA, which was using the equipment. Throughout the hearing, the court appeared to be under the impression that this was a purchase or all-out title transfer, such that there was no ongoing relationship between those two parties. While we were arguing that there must be an ongoing relationship because of the nature of the business, namely that one wouldn't simply send equipment and have nothing else to do with it throughout that tournament. At the end of the hearing, counsel for USTA clarified that this was not, in fact, a title transfer, but it had been, as we had argued all along, an ongoing relationship such that these parties were acting in concert with one another throughout the tournament. I'll now turn back to the question of infringement and whether- Did counsel actually admit that they were acting in concert with each other, or did counsel simply concede that it was a lease arrangement and not a sale, per se? It was the latter. So it could be a lease arrangement without an ongoing, active collaboration between the two entities. So for instance, if I rent a rental car and I return the rental car, I don't necessarily infringe a claim of a patent by renting it if there are significant non-infringement uses of the car. So you're presuming that just because it was a lease, that there was ongoing collaboration between the plaintiff and the USTA. And there was further evidence in the record, as we briefed, that in this particular industry, it's not a rental car, it's equipment that's servicing the equipment throughout the tournament, it's returning the equipment at the end. You don't simply hand this stuff over and not have continued involvement with it. But it's not just the continued involvement, it's a particular continued involvement that would infringe the patent. For purposes of the TRO, all we have to show is that there was acting in concert or acting in participation with, that wouldn't necessarily rise to the level of contributory infringement. In fact, this TRO was written such that it would prohibit, just read it in our opening brief, it's quoted at page seven, it prohibited acts directly or indirectly infringing or contributing in any way to infringing the 341 patent. And so any ongoing relationship between the parties, between the supplier and the customer, would be sufficient to show ongoing acting in concert with or in participation with activities. So I return now to the infringement portion of the district court's opinion. Originally the district court, in the order to show cause, had found that both there was active participation and that there was infringement of the patent. And in fact, in issuing the TRO, that was found to have been, that was found to be the most likely. Now it appears that the district court misunderstood the concept of contributory infringement. As we read the transcript, the district court repeatedly says things like, how can I find the non-party liable, whereas the supplier did nothing wrong. They had been found already in the default judgment to have been contributing to infringement. So, what we had here is an error in the interpretation of the TRO to require us to show direct infringement and a reversal of factual findings that we walked into the hearing believing had already been found in our favor, namely that it was active participation and that there was infringement by the USTA. Can I make sure I understand? You're saying that because the party originally sued for infringement did not respond and therefore a default judgment was entered, a third party should be found to be acting in concert with the accused infringer as a result of that default judgment. Do I have that right? Is that what you're saying? I don't think that those two are necessarily linked. I don't think we're arguing that because there was a default that liabilities shifted to the non-party. Well, you were saying that you've got a judgment in your favor of contributory infringement and that's based on a default judgment, right? Right, that was reviewed by the court and entered as part of the default judgment. What other basis do you have for saying that USTA is a contributing infringer other than the default judgment? I'm saying that the German manufacturers, the contributory infringer, I don't believe that their role was disputed actually of having supplied the equipment minus the one component, which they knew full well that the USTA was going to add back. I don't think that was disputed during the hearing, that the German manufacturers had supplied the equipment minus one component. Right. It's just, it's a unique scenario, right, where it's a non-party that you're seeking to have held in contempt, right? It happens, certainly. The Marial case is a good example. Remind me again, what exactly are you relying on to say that USTA acted in concert or in participation with the German manufacturer? Right. As a customer that essentially creates the market for this type of equipment, there are very few of these Grand Slam tournaments. They acted in concert because they're a customer? Well, the idea is that they create the demand themselves for a supplier of this equipment. They went to the German, I mean this is in the record, they went to the German company and said, give us your equipment, give us the downgraded version of your equipment that lacks the shot clock control, we're going to add it back, okay? This was presumably to avoid an accusation of direct infringement. Was USTA ever sued for infringement? Was the USTA ever sued for infringement? They have not been. Group One is not inclined to sue its customers. Again, there are very few Grand Slam tournaments around the world. But you're seeking to have your customer held in contempt. We wouldn't be seeking to have the customer held in contempt if things had not arisen during the motion to enforce the injunction, namely that they literally hid the ball from the court as to what they were actually doing. They kept saying, we're just using a legacy system. Well, they were just using a legacy system plus the additional component they were adding back that made it directly infringing the patent. We had to call them on this during the briefing on the order to show cause. We called them on this using photographic evidence and finally they coughed up the document that said, yes, all right, we do have the separate handset that we're adding in. We're not just using a legacy system. But they're only using the legacy system from the defendant. So they purposely took the legacy equipment so they wouldn't infringe. And then the TRO is directed to the producer of that equipment. And to those acting in concert with them, of course. Yeah, the USTA requested that the German manufacturer send the version of the equipment that would not directly infringe the patent. None of the equipment would directly infringe the patent. I'm sorry? So the direct infringer here has to be USTA. But there is an action against USTA for that infringement. So essentially, aren't you asking that the court backdoor an infringement action through an interpretation of the TRO that it itself issued? I mean, the order to show cause can't be evidence, can it? An order to show cause is simply, I think this is what is in front of me. Show cause, why I shouldn't issue contempt. USTA came in front of the trial court and said, this is why you shouldn't issue contempt. And the trial court agreed. So the order to show cause isn't really fact-finding, is it? We took it as such. We took it as such. We had submitted documents and evidence with our motion to enforce, the TRO, which the court converted into a contempt proceeding. And with that, we submitted the letter that USTA had privately sent to us in which they discussed, here's our non-infringement position. And we explained to the court, they have no non-infringement position. So, I mean, there were documents, there was evidence on which the court could make fact findings in its order to show cause. OK. Do you want to save your remaining time for rebuttal? Yes, Your Honor. Mr. McLaughlin. Thank you, Your Honor. May it please the court. Before you get into the TRO issues, I'd like to ask you just about post-judgment interest because I'm baffled. It seems like an open-and-shut case to me. Post-judgment interest is mandatory by statute, and yet it wasn't awarded in this case. So, do you have any argument in response to why we shouldn't, at least on that point, reverse? Your Honor, I'm here only representing the USTA, which is not a party to the underlying dispute. So, that question... So, you don't care what we do on that question? Ms. Davis is not on that one. All right. Very good. So, to the TRO, though, and whether the USTA, a non-party, should be held in contempt of that TRO, I think Your Honor's correctly focused in on the threshold question. Is the USTA an entity that is within the scope of the TRO? Who does this TRO enjoin? Clearly, it's the defendants, and it's anyone in privity, in concert, participation with. Some of the case law talks about parties that aid in a violation of the TRO by the enjoined party. The USTA is none of those things. And the evidence presented at the district court did not show that the USTA was acting in concert with the defendants in this case. In fact, I'm reading from Appendix 27, lines 3 to 5, the district court said, your argument is that they're also acting with the defendants to infringe. But the facts just aren't there to support that. And so today, the question is, did the district court abuse its discretion, and was that finding clearly erroneous? And here today, there's no evidence to rebut that. What do we do with the show cause order on page 857? On page 857, where, do you have that handy? You can look at it, page 857? Yes, Your Honor. So where it says, the court has reviewed plaintiff's motion, and documents attached to it, and the next sentence says, the USTA email makes clear that the USTA had actual notice of the TRO and is acting in concert or participation with defendants to employ their trinity systems at the 2021 US Open. What do we do with that? Well, I would submit that our response to this order to show cause is our first opportunity to address the arguments that plaintiffs put forward. So you don't think that was a fact finding? He's trying to argue that was a fact finding that the district court made. And so that's in their favor. If it was, then at the hearing that occurred subsequently, the court heard from us, the other side, on this issue, and made a different judgment. And I think that in the... Where is your best evidence that they made a different determination after hearing from you? It's in that passage that I just read.  27, 3 to 5, I think it was. Yeah. That the court heard the evidence, including our side of the evidence, and concluded that the facts weren't there to support that. And again, the district court, in deciding whether there was contempt, was applying a clear and convincing standard. And I think it's perfectly within her rights to listen to the evidence and find that there was not clear and convincing evidence that the USTA was acting in concert. Aside from the question of whether the USTA was acting in privity with, or concert with, the defendants, another important issue to highlight here is the timeline of events. The legacy Trinity systems were delivered in July of 2021. The technical assistance provided by defendants, the USDA, relating to those legacy systems, ended August 1st. The TRO was issued August 23rd. In the middle of... I think in the middle of the US Open that was then ongoing. And so, after the TRO issued, there's no evidence that the defendants did anything with relation to the legacy Trinity systems in use at the US Open that year. So if the defendants didn't do anything after the TRO, how could they be contributing to the infringement of anybody, including the USTA? And there's never been a finding that the USTA infringed these patents to begin with. There's never been an application of the claims to the actual product that was used that year or any other year to determine if there was, in fact, direct infringement by the USTA. You're saying that because of the default judgment, right? That's right. The default judgment, the defendant, the manufacturer, chose to give up the fight and not appear. So there was a finding, based on the default, that there was an infringement. But the USTA, as a non-party, has not had its day in court to dispute this infringement claim. And so the other aspect, aside from the timeline, that I'd like to address is that the district court, when we're talking about indirect infringement, either induced infringement or contributory infringement, the district court found that the defendants had no knowledge of what the USTA was going to do with this legacy Trinity system. And so without that knowledge component of how its non-infringing products were going to be used, that prevented any finding of indirect infringement by the defendants. So if the defendants ship off their non-infringing product, don't know how we're going to use it, don't know what we're going to add to it, they're just waiting for it to come back after the tournament so they can refresh the batteries as a part of this lease agreement, without the knowledge of infringement, there could not have been a finding of contributory or induced infringement. And the district court properly found that as well. And so the last argument that I heard Mr. Davis make was that you could be in contempt of the TRO, even if there was no direct infringement by the defendants, even if there was no indirect infringement by the defendants, there could also be a violation of the TRO if the defendants contributed in any way to the infringement of their patent. And so here, again, there's no evidence of aiding and abetting the defendants to contribute to the USDA infringing the patents. And so all of these findings by the district court, again, applying a clear and convincing standard of evidence, were well-founded, and there's certainly no abuse of discretion, no finding that was clearly erroneous. Okay, anything further? Nothing, Your Honor. Okay, thank you. Mr. Davis, you have some rebuttal time. On the issue of whether the defendants did anything after the TRO was issued, contributory infringement happens every time there's a direct infringement. Liability for contributory... No, there is a knowing component. There is a requirement for contributory infringement. It's right in the statute. But they have to know the same to be especially made or especially adapted for use in infringement of the patent, right? I'm not saying there's not a knowledge component. I mean, it's not true that every time there's direct infringement, there's necessarily contributory or induced infringement, right? On these facts, in this specific case... In this case, there's a default judgment. Well, in this case, the defendants undisputedly gave over the equipment that they gave to USTA. And if we skip for a moment the question of whether there was knowledge, I'm saying that that contributory infringement that happened initially back in June, July, it also occurred in August when a let was called by the system. But what's crazy about this, you're treating a default judgment as if it means that there has been a finding that since they are using or contributing or doing whatever, it's automatically infringement. You have a default judgment against the infringer. You want to go after somebody who was not a defendant to this case for contempt after a default judgment. They have a right to their day in court, too. And I don't see much merit to a case. When the TRO issued the court, in accordance with Rule 62, said, anyone who receives notice of this TRO can come in, two-day notice, and make a case. And the court in issue... I mean, the district court issues the TRO in order to show cause. They came in and persuaded her that there was no contempt. I mean, that's the way it works in district court. So I guess I'm struggling to see how, if this defendant gives a legacy system, which you would agree and concede is not infringing, correct? And then she says, maybe inarticulately, in her order to show cause, that this demonstrates that there is infringement. They come into court and they persuade the district court. Actually, the entire record shows that there isn't infringement. And they haven't been acting in concert. Isn't that the way it works in district court? I'm not sure that I understand the question. I guess what I'm struggling with in this case is that you're saying, because there was a default judgment, then for all purposes, any system that these defendants provide any other customer necessarily infringes, and they're acting in concert. The default judgment covered what had been alleged in 2019-2020. We made fresh submissions about what the U.S. court was doing. We showed photographic evidence indicating that it was a legacy system plus the handset. So we submitted that evidence. The district court appeared not to consider. Okay, I think your time is up. I thank both counsel. This case is taken under submission.